## SHAREHOLDER AGREEMENT

This agreement is dated as of November 21, 2006, and is between ELUTIONS EUROPE HOLDINGS LIMITED, a private limited company organized under the laws of England and Whales (the "Company"), Elutions, Inc., a Delaware corporation ("Elutions"), and Michael Blitzer Associates, Inc. (d/b/a Blitzer, Clancy & Company), a New York corporation ("Blitzer").

1. Recitals.

    (a) The Company has authorized capital shares consisting of 1,000 Ordinary Shares, Nominal Value £0.10 per share, all initially issued to Elutions (the "Shares").

    (b) Pursuant to the Share Purchase Agreement between Elutions and ITA Holdings, Inc, dated May 23, 2006, the Company has agreed to acquire 100% of the shares of Supervisor Holdings, Ltd., an Israeli company (the "Wizcon Transaction").

    (c) Blitzer has acted as advisor to Elutions and the Company with respect to the Wizcon Transaction and certain other matters. Blitzer desires, and Elutions has agreed, that Blitzer's compensation for all services to Elutions and the Company through the date of this agreement shall be satisfied by issuance of 5% of the Shares (the "Blitzer Shares") to Blitzer.

    (d) Blitzer and Elutions wish to provide for certain restrictions on the transfer of the Blitzer Shares and to create certain options and obligations for the purchase and sale of the Blitzer Shares upon the occurrence of certain events, as provided in this agreement.

2. Issuance of the Shares; Board Seat.

    (a) Within 8 business days following the execution of this agreement, Elutions shall transfer to Blitzer 50 Shares, which Elutions represents is 5% of all outstanding share capital of the Company on the date hereof.

    (b) As of the date hereof, all amounts that Elutions or any of its affiliates may owe to Blitzer for services performed through the date hereof shall be deemed satisfied in full through the transfer of the Shares described in Section 2(a).

    (c) Within 60 days of the execution of this agreement, so long as Blitzer is the owner of 5% or more of the Shares at such time, Blitzer may request that Michael Blitzer be appointed to be on the Board of Directors of the Company; provided, that Michael Blitzer may be removed and/or replaced (i) in accordance with the Memorandum and Articles of the Company, or (ii) at any time, 24 hours following receipt of written request from Astra LLC.

3. Restrictions on Transfer.

    (a) Blitzer understands that the Shares have not been registered under the Securities Act of 1933 in reliance upon an exemption from registration and that the Company has no obligation or intention to register the Shares. Except as provided in paragraphs 4, 5 and 6 of this agreement or as otherwise agreed to in writing by Elutions and permitted by law, Blitzer shall not, exchange, deliver or assign, dispose of, bequeath or gift, pledge, mortgage, hypothecate or otherwise encumber, transfer (including Involuntary Transfer (as defined in Section 4), or permit to be transferred, whether voluntarily, involuntarily, or by operation of law (including, without limitation, the laws of bankruptcy, insolvency, intestacy, descent, and distribution and succession), all or any of the Blitzer Shares.

    (b) Agreement Binding Upon Transferees. In the event that any Blitzer Shares are transferred to any party, other than the Company or Elutions, pursuant to any provision hereof, the

transferee shall take such Blitzer Shares pursuant to all provisions, conditions, and covenants of this agreement, and, as a condition precedent to the transfer of such Shares, the transferee shall agree in writing to be bound by all provisions of this agreement applicable to Blitzer.

(c) <u>Share Transfer Record</u>. No transfer (including Involuntary Transfer) of any Blitzer Shares shall be effective or valid unless and until recorded in the ledger of the Company in accordance with Company's Memorandum and Articles of Association. The Company agrees not to record any transfer (including Involuntary Transfer) of the Blitzer Shares in its ledger unless the transfer is in strict compliance with all provisions of this agreement. Blitzer agrees that, in the event it desires to make a transfer permitted by this agreement, Blitzer shall furnish to the Company such evidence of compliance with this agreement as may be reasonably required by the Board of Directors of, or counsel for, the Company.

(d) <u>Transfers in Violation of this Agreement</u>. Any purported sale, assignment, mortgage, hypothecation, transfer (including Involuntary Transfer) or pledge of, creation of a security interest in, lien or encumbrance on, gift, nonvoting trust, or any other disposition of any Blitzer Shares by Blitzer or any successor to Blitzer that violates any provision of this agreement, will be invalid and the Company will not transfer any of such Blitzer Shares on its books, nor will such Blitzer Shares be entitled to vote or receive dividends thereon, during the period of any such violation. Such disqualifications will be in addition to, and not in substitution of, any other legal or equitable remedies to enforce such provisions. The Company and its officers, directors, and employees shall not be liable to any person for any action or refusal to act taken under the provisions of this subsection.

(e) <u>Restrictive Legend</u>. In addition to any legends required by applicable law, the Blitzer Shares shall bear a statement that all transfers (including Involuntary Transfers) of the certificate are governed by this agreement, a copy of which will be on file at the principal office of the Company.

(f) <u>Agreement by Company</u>. The Company agrees, for and on behalf of itself and its successors and assigns, that (i) it hereby consents to this agreement; (ii) it shall not issue, transfer, or reissue any Blitzer Shares in violation of the provisions of this agreement; and (iii) all certificates representing Blitzer Shares shall bear the restrictive legend.

4. <u>Elutions or Company Option to Purchase in the event of Involuntary Transfer</u>. Upon the occurrence of any Involuntary Transfer (as defined below), the Company or Elutions shall have the option to exercise the call option referred to in paragraph 6. As used in this agreement, an "<u>Involuntary Transfer</u>" shall be deemed to occur whenever (a) the Blitzer Shares are involuntarily sold, transferred or otherwise disposed, or an involuntary sale, transfer or disposal is threatened by any third party, whether by sale upon execution or in foreclosure of any pledge, hypothecation, lien or charge, or any other means; (b) Blitzer files a voluntary petition under any federal or state bankruptcy, insolvency or related law or a petition for the appointment of a receiver, or makes an assignment for the benefit of creditors, or is subjected involuntarily to such a petition or assignment or to an attachment or other legal or equitable interest with respect to the Blitzer Shares and such involuntary petition, assignment, or attachment is not discharged within 45 days after its effective date; (c) a guardian or conservator is appointed for Blitzer; or (d) Michael Blitzer is no longer a partner of Blitzer.

5. <u>Blitzer Put Option</u>. On or after April 1, 2007, Blitzer shall have the right, upon 30-day prior written notice to Elutions, to compel Elutions to purchase or cause to be purchased all, or at a minimum 50%, of the outstanding Blitzer Shares at the price and on the other terms and conditions set forth in Section 7.

6. <u>Elutions or Company Call Option</u>. So long as there are no active negotiations reasonably likely to result in a definitive agreement with respect to a transaction described in paragraph 8, any time after the April 1, 2009, Elutions or the Company, upon 30-day prior written notice to Blitzer, shall have the right to purchase or cause to be purchased all, or a minimum of 50%, of the outstanding Blitzer Shares at the price and on the other terms and conditions set forth in Section 7.

7. <u>Determination of Purchase Price</u>. The purchase price for the Blitzer Shares purchased pursuant to paragraphs 4, 5 and 6 shall be the greater of (i) $300,000 *plus* interest at 8% per annum (compounded annually) from the date of Closing, or (ii) the book value of the Blitzer Shares as determined by the accountant regularly employed by the Company or, if there is none, an independent certified public accounting firm appointed by Elutions. The determination made by the accountant shall be binding and conclusive. Determination of the book value shall be made in accordance with United States generally accepted accounting principles.

8. <u>Elutions Conversion Option</u>. Upon (i) a sale of 50% or more of the voting shares or all or substantially all of the assets of any of (a) Elutions, (b) the Company or (c) a parent of Elutions, to an entity unaffiliated with Astra, LLC or Dan Collins, or (ii) the offering of the Company's, Elutions' or any of their parent or majority-owned affiliate companies' shares on a public stock exchange, Elutions may compel Blitzer to convert the Blitzer Shares to shares of Elutions or its Affiliate that is the subject of (i) or (ii), at a rate to be established by Elutions' board of directors in its sole discretion, which shall be binding upon Blitzer, subject to Blitzer's right to exercise the put option pursuant to paragraph 5 prior to such conversion taking effect. Notwithstanding anything to the contrary in this agreement, Blitzer acknowledges that no representation has been made to Blitzer regarding the intent of Elutions, the Company or any of their respective affiliates with respect to plans or intentions of such parties to complete an offering or registration on a public stock exchange, and Blitzer acknowledges and agrees that Blitzer is not entering into this agreement in reliance on any expectation that such an offering may occur.

9. <u>Miscellaneous</u>.

   (a) <u>Term</u>. This agreement shall remain in effect for so long as any Blitzer Shares are outstanding.

   (b) <u>Notices</u>. Any and all notices and communications permitted or required to be given hereunder shall be deemed received: (i) upon actual delivery, if delivery is by hand; or (ii) upon receipt by the transmitting party of confirmation or answer back if delivery is by facsimile; (iii) one (1) business day after delivery to a recognized national overnight courier, postage prepaid; or (iv) three (3) business days after delivery into the United States mail if delivery is by postage paid registered or certified mail with return receipt requested. Each such notice shall be sent to the respective party at the address indicated below or at any other address as the respective party may designate by notice delivered pursuant hereto.

If to eLutions:   eLutions, Inc.
                  1300 East 8th Avenue, Suite 200
                  Tampa, Florida 33605
                  Attention: General Counsel
                  Telephone:   (813) 371-5500
                  Facsimile:   (813) 371-5501

If to Blitzer:    Michael Blitzer
                  120 East 56th St.
                  Suite 1520
                  New York, NY 10022

10. <u>Governing Law, Submission to Jurisdiction, Waiver of Jury Trial and Arbitration</u>. This agreement will be governed by and interpreted in accordance with the internal substantive laws of the state of Florida. The parties agree that all actions and proceedings arising out of or related to this agreement, except as necessary to enforce indemnity or defense obligations, will be brought only in a state court located in Hillsborough County, Florida or in the United States District Court for the middle district of Florida. The parties hereby consent to such venue and to the jurisdiction of such courts over the subject matter of such proceeding and themselves.

EACH PARTY WAIVES ITS RIGHT TO A JURY TRIAL IN ANY COURT ACTION ARISING AMONG THE PARTIES UNDER THIS AGREEMENT OR OTHERWISE RELATED TO THIS AGREEMENT, WHETHER MADE BY CLAIM, COUNTERCLAIM, THIRD PARTY CLAIM OR OTHERWISE.

If the jury waiver is held to be unenforceable, the parties agree to binding arbitration for any dispute arising out of this agreement or any claim arising under any federal, state or local statutes, laws, or regulations. The arbitration will be conducted in accordance with the arbitration rules promulgated under the CPR Institute for Dispute Resolution's ("CPR") Rules for Non-Administered Arbitration of Business Disputes then prevailing. To the extent that the provisions of this agreement and the prevailing rules of CPR conflict, the provisions of this agreement will govern. The arbitrator(s) will be required to furnish, promptly upon conclusion of the arbitration, a written decision, setting out the reasons for the decision. The arbitration decision will be final and binding on the parties, and the decision may be enforced by either party in any court of competent jurisdiction. Each party will bear its own expenses and an equal share of the expenses of the arbitrator and the fees, if any, of the CPR, and shall make any required deposits of its share of the amounts requested by the arbitrator or the CPR. Failure or refusal by a party to pay its share of the deposits for arbitration fees shall constitute a waiver by that party of its rights to be heard, present evidence, cross-examine witnesses, and assert counterclaims. Informing the arbitrator(s) of a party's failure to pay its share of the deposits for arbitrators' compensation and administrative charges for the purpose of implementing this waiver provision shall not be deemed to affect the arbitrator(s) impartiality or ability to proceed with the arbitration.

(a) <u>Severability</u>. The invalidity or unenforceability of any provision in the agreement shall not in any way affect the validity or enforceability of any other provision and this agreement shall be construed in all respects as if such invalid or unenforceable provision had never been in the agreement.

(b) <u>Entire Agreement</u>. This agreement sets forth all of the promises, agreements, conditions, understandings, warranties, and representations among the parties hereto with respect to the Blitzer Shares and any other matters set forth herein, and there are no promises, agreements, conditions, understandings, warranties, or representations, oral or written, express or implied, among them with respect to the Blitzer Shares or such other matters except as set forth herein. Any and all prior agreements among the parties hereto with respect to the Blitzer Shares are hereby revoked. This agreement is, and is intended by the parties to be, an integration of any and all prior agreements or understandings, oral or written, with respect to the Blitzer Shares.

(c) <u>Waivers</u>. A party's failure to insist on compliance or enforcement of any provision of this agreement shall not affect the validity or enforceability, or constitute a waiver of future enforcement, of that provision or of any other provision of this agreement by that party or any other party.

(d) <u>Successors and Assigns</u>. This agreement shall be binding upon the parties hereto and their heirs, executors, administrators, personal representatives, successors, assigns, and any other transferee and the spouse of any individual Shareholder; provided, however, that nothing in the agreement shall be construed as an authorization to any Shareholder to assign his rights or obligations.

(e) <u>Amendments</u>. This agreement may be modified, amended or waived only by a written agreement executed by the party against which enforcement of such modification, amendment or waiver is sought. Copies of any modification, amendment or waiver of this agreement shall be delivered to each of the parties hereto.

(f) <u>Counterparts</u>. This agreement may be executed and delivered in any number of counterparts, all of which when executed and delivered shall have the force and effect of an original, except that some schedules may exist only on the original copy retained in the Company's records.

(g) <u>Conflicts</u>. This agreement shall take priority over Memorandum and Articles of Association and shall be deemed to modify or amend any conflicting provisions thereof, as well as any

4

conflicting laws of England and Whales applicable to the Company that are permitted by law to be modified by private agreement.

The parties are signing this agreement as of the date stated in the introductory clause.

ELUTIONS, INC.

By: _____
Name: Stanislav Zakharenko
Title: VP & General Counsel

ELUTIONS EUROPE HOLDINGS LIMITED

By: _____
Name: Bronwyn Beaver
Title: Secretary

BLITZER, CLANCY & COMPANY

By: _____
Name:
Title: Principal